UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JOSEPH SAM, III** | **CASE NO. 6:23-CV-00630** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **QUARTERNORTH ENERGY LLC, ET AL.** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## RULING

Before the Court is a Motion for Summary Judgment [ECF No. 92] filed by Defendants Diverse Safety & Scaffolding, L.L.C. ("DSS") and Continental Insurance Company ("CNA"). Pursuant to their motion, DSS and CNA seek dismissal of all claims brought against them by Plaintiff Joseph Sam, III ("Sam"). For the following reasons, the motion is DENIED.

### I.
### BACKGROUND

This case involves claims under Article 2315 of the Louisiana Civil Code and the general maritime law of the United States. Sam alleges that on September 14, 2022, he was performing his duties as a fire watch on an offshore oil platform owned by Quarternorth Energy, LLC when he tripped over a hose and fell down a staircase, thereby sustaining injuries.[1] At the time of the alleged incident, DSS was serving as a third-party contractor responsible for providing safety consultant services to the platform.[2] DSS employee Michael Craig Duncan ("Duncan") was the safety coordinator responsible for conducting safety meetings and "hazard hunts" to monitor and maintain safe conditions on the platform.[3] Duncan conducted a safety meeting on the morning of

---

[1] ECF No. 64 at 5.
[2] ECF No. 92-1 at 4; ECF No. 92-3 at 7-8.
[3] ECF No. 92-1 at 2; ECF No. 92-3 at 7-8.

1

the alleged incident that addressed trip and fall prevention.[4] He also performed a "hazard hunt" at the start of the workday.[5] At approximately 10:00am, the Performance Energy personnel began performing "hot work" (welding) on the platform.[6] At approximately 11:30am-12:00pm, the Performance Energy personnel left the work area and went to the galley for lunch,[7] with Duncan and Sam following soon thereafter.[8] Duncan and Sam both testified that, while going to lunch, they did not see a hose on the staircase where Sam's alleged accident occurred.[9] The Performance Energy personnel resumed the "hot work" approximately thirty minutes to one hour later.[10] Sam's alleged accident occurred at approximately 12:30pm, when he allegedly tripped over a welding hose lying across the platform staircase while returning to his work area.[11] Sam contends that DSS and CNA (DSS's insurer) are liable for his injuries because DSS failed to identify the tripping hazard created by the hose despite its contractual obligation and active role in safety oversight on the platform.[12] DSS and CNA now seek dismissal of Sam's claims.

## II.
## APPLICABLE LAW

A.  **Summary Judgment Standard**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."[13] "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and

---

[4] ECF No. 92-3 at 9-10.
[5] *Id.* at 37, 42.
[6] *Id.* at 36, 87.
[7] *Id.* at 17, 23.
[8] *Id.* at 23.
[9] *Id.* at 22; ECF No. 92-4 at 66.
[10] ECF No. 97-4 at 11; ECF 92-3 at 23.
[11] ECF No. 92-3 at 17-18; ECF No. 97-8 at 1; ECF No. 92-4 at 23.
[12] ECF No. 97 at 4.
[13] Fed. R. Civ. P. 56(a).

the movant is entitled to judgment as a matter of law."[14] "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party."[15] As summarized by the Fifth Circuit:

> When seeking summary judgment, the movant bears the initial responsibility of demonstrating the absence of an issue of material fact with respect to those issues on which the movant bears the burden of proof at trial. However, where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.[16]

When reviewing evidence in connection with a motion for summary judgment, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[17] "Credibility determinations are not part of the summary judgment analysis."[18] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[19]

**B.    Negligence**

Louisiana state courts offer general recourse for negligence under Louisiana Civil Code article 2315(A), providing that "[e]very act whatever of man that causes damage to another obliges

---

[14] *Id.*
[15] *Quality Infusion Care, Inc. v. Health Care Service Corp.*, 628 F.3d 725, 728 (5th Cir. 2010).
[16] *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616, 618 (5th Cir.1994) (internal citations omitted).
[17] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir.2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (court must view all facts and evidence in the light most favorable to the non-moving party).
[18] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[19] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).

him by whose fault it happened to repair it."[20] When imposing liability for negligence under this article, Louisiana courts employ a duty-risk analysis.[21] To establish a cause of action for negligence, a plaintiff must prove that: "(1) the defendant had a duty to conform his conduct to a specific standard; (2) the defendant's conduct failed to conform to the appropriate standard; (3) the defendant's substandard conduct was a cause in fact of the plaintiff's injuries; (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages."[22] Similarly, to establish negligence under general maritime law, a plaintiff "must demonstrate that there was a duty owed by the defendant to the plaintiff, breach of that duty, injury sustained by plaintiff, and a causal connection between defendant's conduct and the plaintiff's injury."[23]

## III.
### ANALYSIS

DSS argues that it did not breach a duty owed to Sam because it solely served as a third-party safety consultant, did not own any hoses aboard the platform, and followed all safety protocols on the date of the alleged incident. Sam argues that DSS undertook a duty of care as a safety consultant that extended to platform workers because DSS was responsible for conducting safety evaluations, inspecting the platform, and making recommendations intended to prevent injuries. Sam also argues that there is a genuine issue of material fact as to whether Duncan had a duty to perform a "hazard hunt" before or at the time the Performance Energy personnel resumed the "hot work" after lunch. Sam contends that DSS would have identified the alleged hose as a hazard if Duncan had surveyed the work area at this time. Finally, Sam argues that there is a

---

[20] La. Civ. Code Ann. art. 2315(A) (2001); *MCI Commc'ns Servs., Inc. v. Hagan*, 74 So. 3d 1148, 1155 (La. 2011).
[21] *Ryder v. Union Pac. R.R. Co.*, 945 F.3d 194, 199 (5th Cir. 2019) (citing *Duncan v. Kansas City S. Ry. Co.*, 773 So. 2d 670, 675 (La. 2000)).
[22] *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 F. App'x 565, 568 (5th Cir. 2020) (citing *Lemann v. Essen Lane Daiquiris, Inc.*, 923 So. 2d 627 (La. 2006)).
[23] *In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir. 1991).

genuine issue of material fact as to whether Duncan breached the duty of care by remaining in the galley or living quarters while the "hot work" resumed after lunch.

The Court finds that there is a genuine issue of material fact warranting trial. At the outset, DSS owed a duty of reasonable care to Sam. "Whether a legal duty exists, and the extent of that duty, depends on the facts and circumstances of the case and the relationship of the parties."[24] The proper inquiry is whether the plaintiff can point to any law—statutory, jurisprudential, or arising from general principles of fault—indicating that the defendant owed him a duty.[25] Louisianna courts have held that third-party safety consultants have a duty to exercise reasonable care.[26] Because DSS was responsible for conducting safety evaluations, inspecting the platform, and making recommendations intended to prevent injuries,[27] the Court finds that DSS owed a duty to take reasonable precautions to protect those working on the platform from workplace hazards.

Furthermore, there is a triable issue as to whether DSS breached its duty by not resuming safety oversight responsibilities when the "hot work" resumed after lunch. Turning to the summary judgment record, Duncan testified that he would conduct a "hazard hunt"—an inspection of the worksite for safety-related hazards—and a safety meeting at the beginning of the workday while the "hot work" personnel set up the worksite.[28] According to Duncan, "we'd look around the area, make sure there's no cords in walkways, cords in stairways, equipment blocking walkways or

---

[24] *Ramey v. DeCaire*, 869 So. 2d 114, 119 (La. 2004).
[25] *Malta v. Herbert S. Hiller Corp.*, 333 So. 3d 384, 395 (La. 2021).
[26] *See id.* at 394-96 (affirming the trial court's finding that a company hired to inspect an oil-production platform's fire-suppression systems owed a duty of care to the employees on the platform); *Esco v. Smith*, 468 So. 2d 1169, 1176 (La. 1985) (finding that the on-site construction superintendent responsible for implementing safety policies and conducting weekly safety meetings had a duty to "instruct the plaintiff and other men on the job in proper, safe work techniques as well as a personal responsibility to inspect for and eliminate any unsafe conditions").
[27] ECF No. 92-3 at 7-8, 42.
[28] *Id.* at 8.

stairways."[29] Sam's injury, however, occurred later in the day—after he and the rest of the personnel on the platform took their lunch break.[30] DSS argues that Duncan had no duty to conduct "hazard hunts" throughout the day and that Sam has not produced any evidence showing that Duncan breached a duty by failing to conduct a "hazard hunt" after lunch and before the "hot work" personnel resumed operations. The Court finds, however, that there is evidence from which a reasonable trier of fact could conclude that DSS breached its duty by not resuming safety oversight responsibilities when the "hot work" resumed after lunch.

First, although there is some dispute over when Sam, the "hot work" personnel, and Duncan left the galley after lunch, there is evidence in the summary judgment record that the "hot work" personnel had already resumed their work at the time Sam left the galley and allegedly tripped over the hose.[31] There is also evidence that Duncan did not leave the galley to perform any safety-related inspections or oversight when the "hot work" resumed after lunch.[32]

Second, Duncan testified that his safety-related duties continued throughout the workday. Specifically, Duncan testified that, during the course of the workday, "I would basically be out there standing watching."[33] He testified that he and the "company man" (Kade Terro) would "oversee [the hot work], make sure they're doing it right."[34] Duncan further testified that he carried out his safety duties "70 percent of the day."[35] Duncan never stated that his safety-related responsibilities were limited to the "hazard hunt" and safety meeting conducted in the morning. Accordingly, there is some evidence in the summary judgment record that Duncan's (and, thus,

---

[29] Id.
[30] ECF No. 97-4 at 11-12; ECF No. 97-6 at ¶¶ 4-5.
[31] ECF No. 97-4 at 11-12; ECF No. 97-6 at ¶ 5.
[32] No. 97-6 at ¶ 8; ECF No. 92-3 at 19.
[33] ECF No. 92-3 at 8.
[34] Id. at 10.
[35] Id. at 8.

DSS') safety responsibilities extended beyond the morning "hazard hunt" and safety meeting and included safety-related oversight responsibilities throughout the workday. Based on this evidence, a reasonable trier of fact could conclude that Duncan should have resumed his oversight responsibilities when the "hot work" resumed after lunch.

Considering this evidence as a whole, there is a triable issue as to whether DSS breached its duty by not resuming safety oversight responsibilities when the "hot work" crew resumed operations after lunch. Furthermore, the alleged incident occurred on the only staircase that went down to where the "hot work" was being performed.[36] The trier of fact could reasonably conclude that, if Duncan had resumed his safety oversight responsibilities prior to the resumption of the "hot work" on the platform, then the tripping hazard might have been discovered. Thus, the trier of fact could reasonably find that Duncan's failure to resume his duties was the cause of Sam's injuries. Accordingly, the Court denies DSS' motion for summary judgment.

For the reasons set forth herein, DSS's Motion for Summary Judgment [ECF No. 92] is DENIED.

THUS DONE in Chambers on this 20th day of January, 2026.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[36] ECF No. 92-4 at 24, 105.